**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| DESIGN IDEAS, LTD., | ) | |
| an Illinois Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:10cv03217 |
| | ) | |
| THE YANKEE CANDLE | ) | |
| COMPANY, INC., | ) | |
| a Massachusetts corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT**

**NOW COMES** plaintiff Design Ideas, Ltd. ("Design Ideas" or "DI"), by and through its

undersigned attorneys, and respectfully files this opposition to defendant The Yankee Candle

Company, Inc. ("defendant" or "Yankee Candle")'s second motion for summary judgment (d/e

32) on copyright protection.

**INTRODUCTION**

This is a classic "knock-off" case, in which defendant Yankee Candle – a customer of

Design Ideas – ordered and received samples from DI of glass sailboat sculpture sets that DI

created and distributes under the trademark **REGATTA**.  Yankee Candle also received years of

DI catalogs with numerous photographs of the **REGATTA** sculpture sets.  Instead of buying

authentic **REGATTA** sculpture sets from Design Ideas, however, Yankee Candle procured

knock-off copies from Asia.  Yankee Candle essentially admits knocking off Design Ideas'

works by its citation of *Jonathon Browning*, a case in which a defendant did the same thing to its business associate.[1]

Defendant's motion challenges the copyright protection ("originality") of Design Ideas' **REGATTA** sculpture sets. Defendant's sole evidence are conclusory statements is U.S. Copyright Office ("Office") correspondence concerning a registration refusal for a component of the first **REGATTA** sculpture set, which the Office thought was an ash tray, and a later decision not to supplement a copyright registration for multiple works, including a later **REGATTA** sculpture set. However, this evidence is wholly inadequate and immaterial to copyright protection.

The U.S. Supreme Court definitively held in *Feist Publications v. Rural Telephone Service Company* that copyright protection exists at the moment of creation and fixation of original works, for which the standard is "…extremely low….The vast majority of works make the grade quite easily."[2] The U.S. Copyright Act expressly states that "registration is permissive" and copyright holders can sue for infringement without registration.[3] Without even mentioning registration, the Act states: "Copyright protection subsists…in original works of authorship fixed in any tangible medium of expression…."[4] U.S. copyright law is absolutely clear that "originality" is the standard, not registration, and that the courts are the final arbiter of protection, not the Office.

---

[1] D/e 32 at p. 18; *Jonathon Browning v. Venetian Casino Resort, LLC.,* 2009 WL 1764652* (N.D.Ca. 2009).

[2] 499 U.S. 340, 345-47 (1991)

[3] 17 U.S.C. 408(a), entitled "Registration Permissive, 411(a). Registration is not required for infringement of (i) the rights of attribution and integrity, (ii) non-U.S. works and (iii) works refused registration. 17 U.S.C.A. 411(a), *Reed Elsevier v. Muchnik*, ___ U.S. ___, 130 S.Ct. 1230, 1246 (2010).

[4] 17 U.S.C. 102(a).

Nonetheless, after first attempting to distract by rehashing matters already decided by Magistrate Judge Cudmore, defendant asserts the Court should defer to the Office's unsupported, conclusory statements that DI's works are functional, lack separability and merely depict common stock elements, and prematurely asserts the liability defenses of merger and *scenes a faire*. However, Magistrate Judge Cudmore held that registration is not required for copyright protection, Office findings are not controlling on the Court and Design Ideas' comportment in the litigation has been above board.[5]  The law is clear that courts are equally well suited to decide copyright protection as the Office, particularly for basic works like sculpture, and separability and functionality do not bar protection here.  The Seventh Circuit also instructs that merger and *scenes a faire* are infringement defenses, that should only be decided at liability, that is, when the parties' works are compared under the substantial similarity standard, not here at copyright protection.  Even when ripe, proponents must submit sufficient evidence, which defendant failed to do.

Defendant's evidence is wholly inadequate, and it has failed to shift the burden under Federal Rule of Civil Procedure 56.  In contrast, Design Ideas submits herewith positive, direct evidence of the numerous creative decisions made in creation of its **REGATTA** sculpture sets, which proves copyright protection under the U.S. Supreme Court's forgiving standard enunciated in *Feist*.[6]  Defendant's motion should be denied.

STATEMENT OF FACTS

## I.      Undisputed Material Facts

None.  Defendant has not asserted any material facts.  All of the facts defendant has asserted are immaterial.  Defendant's asserted material facts concern U.S. Copyright Office

---

[5] D/e 19 at pp. 6-8.

[6] 499 U.S. at 345-47.

registration and refusal to register or supplement Design Ideas' claims to copyright.  However, copyright protection does not depend on whether a work is registered with the U.S. Copyright Office.  The Copyright Act expressly states registration is permissive, and that copyright holders can sue for infringement without registration.   (17 U.S.C. 408(a), entitled "Registration Permissive, 411(a).[7])  Rather, without even mentioning registration, the Act states:  "Copyright protection subsists…in original works of authorship fixed in any tangible medium of expression…."  (17 U.S.C. 102(a).)  The registration status of Design Ideas' asserted works does not refute or establish their copyright protection, and therefore is immaterial.

## II.    Disputed Material Facts

None.   Defendant has not asserted any material facts.   All of the facts defendant has asserted are immaterial.   Defendant's asserted material facts concern U.S. Copyright Office registration and refusal to register or supplement Design Ideas' claims to copyright.   However, copyright protection does not depend on whether a work is registered with the U.S. Copyright Office.  The Copyright Act expressly states registration is permissive, and that copyright holders can sue for infringement without registration.   (17 U.S.C. 408(a), entitled "Registration Permissive, 411(a).[8])  Rather, without even mentioning registration, the Act states:  "Copyright protection subsists…in original works of authorship fixed in any tangible medium of expression…."  (17 U.S.C. 102(a).)  The registration status of Design Ideas' asserted works does not refute or establish their copyright protection, and therefore is immaterial.

---

[7] Registration is also not required for infringement suit, where infringement is of a foreign work or of a U.S. work, where the moral rights of attribution and integrity under 17 U.S.C. 106(a) have been infringed.  17 U.S.C.A. 411(a), *Reed Elsevier v. Muchnik*, ___ U.S. ___, 130 S.Ct. 1230, 1246 (2010).

[8] *See, supra,* fn. 8.

### III.    Disputed Immaterial Facts

4, 5, 8, 12, 13, 14, 15, 16, 18, 19, 20, 22 and 23.

4.      Design Ideas disputes, because its Spring 2006 catalog contains numerous REGATTA marked sailboat sculptures, including translucent white and blue sculptures with different frosting shades and the sherbet selection of red, blue and green sculptures.  (Goodrum Declaration at ¶ 1 and Ex. A thereto.)

This proposed fact is also immaterial and misleading.  Whether or not the Office issued a copyright registration does not establish or refute that Design Ideas' infringed works are protected by copyright.  In its motion, Defendant claims Design Ideas' works are not.  (D/e 32 at p. 2.)  However, copyright protection does not depend on whether a work is registered with the U.S. Copyright Office.  The Copyright Act expressly states registration is permissive, and that copyright holders can sue for infringement without registration.  (17 U.S.C. 408(a), entitled "Registration Permissive, 411(a).[9])  Rather, without even mentioning registration, the Act states: "Copyright protection subsists…in original works of authorship fixed in any tangible medium of expression…." (17 U.S.C. 102(a).)  The registration status of Design Ideas' asserted works does not refute or establish their copyright protection.

5.      Design Ideas disputes, because Defendant asserts that the Office sent an "advisory letter" upon registration, however, the Office did no such thing, and only sent Design Ideas a fax during prosecution of the application, requesting additional information to complete registration.  (Goodrum Declaration at ¶ 2 and Ex. B thereto.)   This proposed fact is also immaterial.  Registration status is immaterial to whether Design Ideas' infringed works are copyright protected.  See response to Disputed Immaterial Fact 4.  The proposed fact is also misleading and

---

[9] *See, supra,* fn. 8.

conclusory.  The documents submitted with defendant's motion speak for themselves, and do not communicate "holding[s]" "as a matter of law."  The Office's May 20, 2011, letter (Ex. G of defendant's motion, d/e 32-7) specifically states in the first full paragraph at p. 2 that its conclusions are an "opinion" and also states the conclusions are "in its view."  Indeed, the Office itself refers to an "advisory letter."

8.      Design Ideas disputes, because it filed this lawsuit based on its copyright protected works, regardless of their registration status.  See response to Disputed Immaterial Fact 4.

12.      Design Ideas disputes, because the Office's said communications do not communicate holdings.  The Office's May 20, 2011, letter (Ex. G of defendant's motion, d/e 32-7) specifically states its "opinion" and also states in the first full paragraph at p. 2 that same is "in its view."  The Office itself elsewhere refers to its own "advisory letter."  (Goodrum Declaration at ¶ 3 and Ex. B thereto.)  This proposed fact is also immaterial, because registration status is immaterial to whether Design Ideas' infringed works are copyright protected.  See response to Disputed Immaterial Fact 4.

13.      Design Ideas disputes, because the Office's May 20, 2011, letter (Ex. G of defendant's motion, d/e 32-7) does not communicate a "holding."  Rather, the Office's said letter specifically states in the first full paragraph at p. 2 it is reiterating its "opinion" and also that same is "in its view."  The Office itself elsewhere refers to its own "advisory letter."  **[cite]**  This proposed fact is also immaterial, because registration status is immaterial to whether Design Ideas' infringed works are copyright protected.  See response to Disputed Immaterial Fact 4.

14.      Design Ideas disputes, because it does not know if or when defendant ordered anything from the Office.  Despite a timely served document request, defendant failed to produce

any documents or provide any response whatsoever, despite inquiries from Design Ideas'
counsel.  Design Ideas' document request and defendant's response deadline were both prior to
any of the discovery stays in this matter.  This proposed fact is also immaterial, because
registration status is immaterial to whether Design Ideas' infringed works are copyright
protected.  See response to Disputed Immaterial Fact 4.  This proposed fact is also misleading
and attempts to rehash matters already decided by Magistrate Judge Cudmore.  See d/e 19.  Mr.
Carson's opinion on Design Ideas' comportment in this matter is immaterial to whether Design
Ideas' infringed works are copyright protected, let alone wholly lacking in foundation.

15.     Design Ideas disputes, because it does not know when defendant knew or did not
know about the registration status of Design Ideas' works.  This proposed fact is also immaterial,
because registration status is immaterial to whether Design Ideas' infringed works are copyright
protected.  See response to Disputed Immaterial Fact 4.

16.     Design Ideas disputes, because it does not know counsel for defendant has taken
the action undertaken, and the registrations referenced in the proposed fact are multi-work
registrations, covering scores of works.  Moreover, this proposed fact is also immaterial, because
registration status is immaterial to whether Design Ideas' infringed works are copyright
protected.  See response to Disputed Immaterial Fact 4.  This proposed fact is also misleading
and attempts to rehash matters already decided by Magistrate Judge Cudmore.  See d/e 19.

18.     Design Ideas disputes, because it does not know whether it was the third time.
Each time counsel for defendant requested copyright registrations from Design Ideas' counsel,
said counsel indicated such would be provided, as soon as defendant provided its inventory
source documents, showing the volume of defendant's import of its infringing sailboats, which
Design Ideas requested in its cease and desist letter.  (Goodrum declaration at 4.)  Defendant

continually refused to provide these documents, but nonetheless, Design Ideas' sent defendant all the copyright registrations it had.  (*Id.*)  This proposed fact is misleading, for the same reasons. This proposed fact is also immaterial, because registration status is immaterial to whether Design Ideas' infringed works are copyright protected.  See response to Disputed Immaterial Fact 4.

19.    Design Ideas disputes, because this proposed fact implies Design Ideas failed to do something it should have.  See response to Disputed Material Fact 18.  This proposed fact is misleading, for the same reasons.  This proposed fact is also immaterial, because registration status is immaterial to whether Design Ideas' infringed works are copyright protected.  See response to Disputed Immaterial Fact 4.

20.    Design Ideas disputes, because this proposed fact implies Design Ideas failed to do something it should have.  See response to Disputed Material Fact 18.  This proposed fact is also immaterial, because registration status is immaterial to whether Design Ideas' infringed works are copyright protected.  See response to Disputed Immaterial Fact 4.  This proposed material facts is also misleading and attempts to rehash matters already decided by Magistrate Judge Cudmore.  See d/e 19.

22.    Design Ideas disputes, because this proposed fact implies Design Ideas failed to do something it should have.  See response to Disputed Material Fact 18.  This proposed fact is also immaterial, because registration status is immaterial to whether Design Ideas' infringed works are copyright protected.  See response to Disputed Immaterial Fact 4.  This proposed material facts is also misleading and attempts to rehash matters already decided by Magistrate Judge Cudmore.  See d/e 19.

23.    Design Ideas disputes, because the Office's May 20, 2011, letter (Ex. G of defendant's motion, d/e 32-7) does not communicate a "holding."  Rather, the Office's said letter

specifically states in the first full paragraph at p. 2 it is reiterating its "opinion" and also that same is "in its view."  The Office itself elsewhere refers to its own "advisory letter."  (Goodrum declaration at 5 and Ex. D thereto.)  This proposed fact is also immaterial, because registration status is immaterial to whether Design Ideas' infringed works are copyright protected.  See response to Disputed Immaterial Fact 4.

## IV.     Undisputed Immaterial Facts

1, 2, 3, 6, 7, 9, 10, 11, 17, 21 and 24.

1.      Whether or not Design Ideas submitted a copyright registration application to the Office is immaterial.  In its instant motion, Defendant claims it is entitled to summary judgment as a matter of law because Design Ideas' infringed works are "not entitled to copyright protection."  (D/e 32 at p. 2.  This is essentially a defense that the works are not "original.")  Copyright registration by the U.S. Copyright Office and refusals to register a copyright or to supplement an existing registration have nothing to do with copyright protection.  The U.S. Copyright Act expressly states registration is permissive, and that copyright holders can sue for infringement without registration.   (17 U.S.C. 408(a), entitled "Registration Permissive, 411(a).[10])  Rather, without even mentioning registration, the Act states:  "Copyright protection subsists…in original works of authorship fixed in any tangible medium of expression…."  (17 U.S.C. 102(a).)  The registration status of Design Ideas' asserted works does not refute or establish their copyright protection.

2.      The Office's registration refusal is immaterial to whether Design Ideas' infringed works are copyright protected.  See response to Undisputed Immaterial Fact 1.

---

[10] *See, supra,* fn. 8.

3.      Whether or not Design Ideas requested reconsideration or appealed the Office's registration refusal is immaterial to whether Design Ideas' infringed works are copyright protected.  See response to Undisputed Immaterial Fact 1.

6.      Any Design Ideas' cease and desist letter and its enclosures are immaterial to whether Design Ideas' infringed works are copyright protected.  See response to Undisputed Immaterial Fact 1.

7.      Any Design Ideas' cease and desist letter and its contents are immaterial to whether Design Ideas' infringed works are copyright protected.  See response to Undisputed Immaterial Fact 1.  At the time, Design Ideas advised defendant several times that enclosure of the VA 1-376-012 was inadvertent, and the enclosure should have been of its VA 1-427-637 registration.

9.      Whether or not Design Ideas submitted a Form CA to the Office and defendant's awareness of same, is immaterial to whether Design Ideas' infringed works are copyright protected.  See response to Undisputed Immaterial Fact 1.  The proposed fact is also misleading, because defendant is attempting to rehash issues already decided by Magistrate Judge Cudmore.  See d/e 19.

10.     The contents of any Design Ideas Form CA submitted to the Office are immaterial to whether Design Ideas' infringed works are copyright protected.  See response to Undisputed Immaterial Fact 1.

11.     Any correspondence between the Office, Design Ideas and defendant and the contents of same are immaterial to whether Design Ideas' infringed works are copyright protected.  See response to Undisputed Immaterial Fact 1.

17.     This proposed fact is immaterial, because the registration status of the infringed Design Ideas' works, or the scope of any Design Ideas' registrations, is immaterial to whether the works are copyright protected.  See response to Undisputed Immaterial Fact 1.

21.     This proposed fact is immaterial, because Design Ideas' filing of an amended complaint and the contents thereof have nothing at all to do with whether Design Ideas' infringed works are copyright protected.  See response to Undisputed Immaterial Fact 1.

24.     This proposed fact is immaterial, because Design Ideas' filing of an amended complaint and the contents thereof have nothing at all to do with whether Design Ideas' infringed works are copyright protected.  See response to Undisputed Immaterial Fact 1.

## V.     Additional Material Facts

1.     Christopher T. Hardy ("Mr. Hardy") is an employee and the Design Director of Design Ideas.  (Hardy Declaration at ¶¶ 1 - 2.)

2.     Andy van Meter is the President of Design Ideas.  (Hardy Declaration at ¶ 3.)

3.     Mr. Hardy designed three different **REGATTA** sculpture sets by himself after a brainstorming session with Design Ideas' president.  (Hardy Declaration at ¶¶ , 43 and 6.)

4.     Design Ideas' **REGATTA** sculpture sets are sets of three separate, glass sailboat sculptures.  (Hardy Declaration at ¶¶ 3, 7 and 15 and Ex. A thereto.)

5.     Mr. Hardy designed the **REGATTA** sculpture set with white translucent sails depicted immediately below in 2001.  (Hardy Declaration at ¶ 3.)



6.      Mr. Hardy designed the **REGATTA** sculpture set with blue translucent sails depicted below subsequently to designing the set with white translucent sails.  (Hardy Declaration at ¶ 3.)



7.      Mr. Hardy designed the **REGATTA** sculpture set with two-toned red, blue and green sherbet sails depicted below in 2005.  (Hardy Declaration at ¶ 3 and 18 and Ex. A thereto.)



8.      Design Ideas does not sell the individual sculpture components of its sculpture sets separately, but rather always sells them in sets of three.  (Hardy Declaration at ¶ 3.)

9.      Mr. Hardy decided that each individual, component sailboat sculpture would be comprised of a sail and a hull, and that the sails on each of the three individual sculptures in all **REGATTA** sculpture sets would be of different heights.  None are of the same height in a set. In some of the sets, Mr. hardy decided that each sail would be of different colors, and in some, each sail would be of different colors or shades.  (Hardy Declaration at ¶¶ 3, 7 and 10 and Ex. A thereto.)

10      .      Each individual sailboat sculpture in the **REGATTA** sculpture sets is a fanciful abstraction of a sailboat, not a replica, nor accurate reproduction of any actual sailboat. (Hardy Declaration at ¶¶ 4, 5 and 10.)

11.      Mr. Hardy began creating the **REGATTA** sculpture sets by drawing individual sailboat designs free-hand without reference to any source whatsoever, *e.g.*, sailing books, magazines, photographs, the internet, other three-dimensional sailboat sculptures, *etc*.  Mr.

Hardy did not copy the individual **REGATTA** sculptures or sculpture sets from any source. (Hardy Declaration at ¶ 6.)

12.     Attached to the Hardy Declaration as Exhibits B and C are some of Mr. Hardy's sketches, drawn by Mr. Hardy when creating the **REGATTA** sculpture sets, as well as a "Sample Production Form" with sketches by Mr. Hardy.  (Hardy Declaration at ¶ 6 and Exhibits B and C thereto.)

13.     Mr. Hardy considered creating the individual sculptures out of wood, metal and glass, but decided to use glass, based on what looked better to him aesthetically.  (Hardy Declaration at ¶ 7.)

14.     Mr. Hardy wanted each individual sculpture to be illuminated, because he thought illumination would make them more decorative and visually pleasing.  (Hardy Declaration at ¶¶ 7-8.)

15.     Mr. Hardy considered using opaque, clear and frosted glass for the sails, and decided to use frosted glass.  Mr. Hardy thought frosted glass would diffuse the illumination and give a pleasant glow.  Mr. Hardy wanted to the sculptures to glow with the light illuminating the entire design.  (Hardy Declaration at ¶¶ 7-8.)

16.     Mr. Hardy sought to create a decorative object for a table top.  Mr. Hardy did not seek to design a light source, such as for reading or illuminating the table top to facilitate eating.  Mr. Hardy decided not to use in the **REGATTA** sculptures large candles such as tapers and pillars, capable of performing such functions.  Tealight candles are incapable of such and all other similar functions.  (Hardy Declaration at ¶ 7.)

17.     As part of the design process, Mr. Hardy thought about the individual sailboat components, their shape and proportion to one another, as well as their number and the

proportion of each component sculpture – sail to hull.  Mr. van Meter and

Mr. Hardy desired a lot of little boats on the table top.  (Hardy Declaration at ¶¶ 4 and 9.)

18.     Mr. Hardy drew abstractions of sailboats, not literal replicas.  For the hull, Mr.

Hardy drew a symmetrical, elliptical base with compound curved edges..  Mr. Hardy did not use

sharp lines or angles, as he could have, because he desired an abstraction that was also

aesthetically pleasing to him.  (Hardy Declaration at ¶ 10-12, 16 and 17.)

19.     Mr. Hardy's **REGATTA** hull does not contain a stern.  (Hardy Declaration at ¶

14.)

20.     The hull Mr. Hardy drew and designed is not a generic tealight candle base.

(Hardy Declaration at ¶ 11-12 and Ex. F thereto.)

21.     Mr. Hardy could have drawn the hull any number of a hundred different ways.

Mr. Hardy's selection of an elliptical hull shape was arbitrary and based on what was pleasing to

his eye.  Mr. Hardy decided not to attach a sail design to any number of generic tealight candle

bases available in any shape.  Mr. Hardy decided not to draw long, sleek, angular shapes,

because he wanted to evoke a certain mood he had in his mind.  (Hardy Declaration at ¶¶ 11-12

and Ex.s B – E thereto.)

22.     Mr. Hardy decided not to place his sail designs on a square or rectangular base,

and obscured the base by bringing the sail design down to the table top.  Mr. Hardy did not want

to do so, but rather wanted something pleasing to his eye.  (Hardy Declaration at ¶ 12.)

23.     Mr. Hardy's based the shape of the hull of each individual **REGATTA** sculpture

on his own personal, aesthetic decisions, and did not follow any model or source.  (Hardy

Declaration at ¶¶ 5, 10 and 14.)

24.      Mr. Hardy selected varying heights for the sails, curving them around the hull, and desired the whole look to be dynamic and not flat.

Mr. Hardy thought varying the sail size would suggest the boats in a complete set were in motion and at varying distance from observers not on board.  (Hardy Declaration at ¶ 15.)

25.      Mr. Hardy considered the number of individual sailboat sculptures to include in each set.  Mr. Hardy wanted "lots of little boats," which he thought would be pleasing.  Mr. Hardy thought about including 1 or 2 individual sculptures per set, and also thought about including 4 or 5 per set.  Mr. Hardy decided to include 3 individual sculptures in each set, because such would look beautiful.  Mr. Hardy decided against including 1 or 2, thinking there would be insufficient dynamism or action, and that 4 or 5 would appear to busy or cluttered on a table top.  (Hardy Declaration at ¶ 15.)

26.      Mr. Hardy decided to position the sail on the hull in an arbitrary way, based on what looked attractive to him.  Mr. Hardy thought curving the glass of the sail would make for a pleasant glow.  Mr. Hardy could have presented the sail as flat, and could have presented it down the center of the hull, but decided not to do so.  (Hardy Declaration at ¶ 16 and 18.)

27.      Mr. Hardy designed the sails with irregular curves, tipping back somewhat, with sometimes with vertical breaks in the sails, because he sought fanciful abstractions and designs aesthetically pleasing to him.  Mr. Hardy desired the viewers imaginations to "play" with his designs.  (Hardy Declaration at ¶ 16.)

28.      Mr. Hardy considered presenting his sail designs in any number of ways.  He considered having them flat, rectangular, like old-time whaling vessels, suggested "luffing" or contained "battens."  (Hardy Declaration at ¶ 18 and Ex. D thereto.)

29.     Mr. Hardy decided to present the hull in clear glass without any color or frosting effect.  Mr. Hardy did so, because he desired to focus attention on the sails. Mr. Hardy wanted the design to be "fun" and visually pleasing.  Mr. Hardy thought adding color to the hulls would distract from the "fun" of the sails.  (Hardy Declaration at ¶ 19.)

30.     In designing the 2005 **REGATTA** sherbet sculpture sets, Mr. Hardy picked several colors from a selection of thousands.  Mr. Hardy picked cooler colors for his earlier **REGATTA** sculpture sets – white and blue.  For the sherbet **REGATTA** set, Mr. Hardy desired a warmer, Summer palate.  (Hardy Declaration at ¶ 20.)

31.     From numerous color samples to start with, Mr. Hardy initially selected a group of 12 to 18 colors.  After contemplating these colors, Mr. Hardy then selected the final three appearing in the sherbet **REGATTA** set.   Mr. Hardy made these color selections based on what was most pleasing to him aesthetically and evoked the look he desired in his sculptures.  (Hardy Declaration at ¶ 20 and Ex. D thereto.)

## ARGUMENT

### I.     "[T]he *Sine Qua Non* of Copyright Is Originality[,]" Not Registration.

In *Feist*, the U.S. Supreme Court instructed that "originality" is the *sine qua non* and "bedrock principle" of copyright.  (499 U.S. at 345-47.)  Any analysis of copyrightability must begin with *Feist*.  (*Id.*)  To be original, the Court held that a work must (i) be independently created by the author, rather than copied from other works, and (ii) "possess at least some minimal degree of creativity."  (*Id.* at 358; U.S. CONST., Art. I, Sec. 8, Cl. 8; 17 U.S.C. 102(a).) Regarding the creativity prong, the Court held that the work only needs to possess a "spark" or some "minimal degree" of creativity to be protected.  (*Id.*)

The Supreme Court instructs in *Feist*:

> **The originality requirement is not particularly stringent.**

(*Id.*)  (Emphasis added.)

> **To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice.  The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be.**

(*Id.* at 346)  (Internal citations omitted.)  (Emphasis added.)

> **Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying.**

(*Id.*)  (Emphasis added.)  Referring to its earlier decision in *The Trade-Mark Cases*, in which it defined the constitutional terms "writings" and "authors", the Court stated:

> [W]hile the word *writings* may be liberally construed, as it has been, to include original designs for engraving, prints, &c., **it is only such as are *original*, and are founded in the creative powers of the mind. The writings which are to be protected are *the fruits of intellectual labor*,** embodied in the form of books, prints, engravings, and the like.

(*Id.)*  (Emphasis added and in original.)

As the Court instructs in this fundamental case, the amount of originality required for copyright protection is "not particularly stringent" and "extremely low."  (*Id.* at 358.) Resemblence to other works, not the result of copying, does not negate protection.  (*Id.*)  Even a "crude, humble or obvious" "creative spark" will suffice.  (*Id.*)  Even compilations of individually unprotected elements can be copyright protected, if those elements are selected, coordinated or arranged in an original fashion.  (*Id.* at 345-49; *Lollytogs v. Knitwaves*, 71 F.3d 996, 1003-4 (2d Cir. 1995).)[11]. What is protected is "the author's original contributions."  (*Feist*, 499 U.S. at 350.)

---

[11] "Knitwaves' "original contribution" consists not merely - as Lollytogs would have it - in arranging leaves and squirrels in a specific pattern, but in (1) selecting leaves and squirrels as its dominant design elements; (2) coordinating these design elements with a "fall" palette of colors and with a "shadow-striped" (for the Leaf Sweater) or a four paneled (for the Squirrel Cardigan) background; and (3) arranging all the design elements and colors into

## A.      DI's REGATTA sculpture sets are sufficiently "original" for copyright.

Design Ideas' **REGATTA** sculpture sets contain much more than a crude creative spark and quite easily pass the grade under *Feist*.  Design Ideas submits herewith the Declaration of its Design Director, Mr. Christopher T. Hardy, who created the **REGATTA** sculpture sets.  In his declaration, Mr. Hardy details all of the aesthetic and creative design decisions he made when creating his **REGATTA** sculpture sets.

Mr. Hardy decided not to create accurate, verbatim nautical reproductions of any existing sailboat (facts 10, 18 and 23), but rather sought to create decorative, aesthetically-pleasing abstractions, based on what was pleasing to his eye.  (Facts 13, 16, 21-23, 26, 27 and 29.)  Mr. Hardy decided to create a visually final design that was "fun" (fact 27) and "played" with the observer's view perception.  (Fact 24 and 29.)  Mr. Hardy considered and made design decisions concerning the form of the individual sculptures and their compilation in a set, the materials with which to create the individual sculptures, and the design, color, shape, angle, surface texture and number of the individual component parts of each individual sculpture – the sails and hulls.  (Facts 13, 15, 17, 18, 21 and 24-31.)  Mr. Hardy decided not to use common, generic, regular shapes in his designs.  (Facts 20-22.)  Mr. Hardy drew free-hand sketches as part of his design process to create the works.  (Fact 11 and 12.)  Mr. Hardy did not copy his designs from any source.  (Fact 11.)

Mr. Hardy desired "lots of little boats" on the table top, which he thought would be pleasing.  (Fact 25.)  Mr. Hardy decided to illuminate each individual sailboat sculpture, because he liked the illuminated look.  (Facts 14-15.)  Mr. Hardy considered different numbers of boats to present in each overall sculpture set, including 1 or 2 individuals and 4 or 5 individuals.  (Fact

---

an original pattern for each sweater.

25.)  Mr. Hardy decided to present 3 individuals in a sculpture set, because he liked to look the best, desiring to bring dynamism and action to the table top.  (Fact 25.)  Mr. Hardy decided against using 1 or 2, because there would not be sufficient action, and against 4 or 5, because it would look to busy.  (Fact 25.)

Mr. Hardy considered using wood, metal and glass to construct the sculptures, but decided on glass and to add a "frost" texture to the glass for the sails.  (Facts 13 and 15.)  He considered and decided the shape, size, height, positioning and proportion of each element of each individual sculpture – sail and boat, as well as the size, height and proportion of each sailboat in a set to each other.  (Facts 13, 15, 17, 18, 21 and 24-31.)  Mr. Hardy considered using a flat sail positioned it down the center of the hull, but decided not to do so.  (Facts 24 and 26.)  Mr. Hardy decided instead to curve the sails around the hull, not to obscure the hull blow.  (Fact 27.)  Mr. Hardy decided to present a symmetrical, elliptical hull, lacking a stern, which he thought was completely arbitrary and visually appealing.  (Fact 19 and 21.)  Mr. Hardy decided to present the sail on each individual sculpture in a set at a different height.  (Fact 24.)  Mr. Hardy also decided to always present each hull in clear, non-textured and non-colored glass.  (Fact 29.)  Mr. Hardy also selected various colors for the sails, including three different "sherbet" colors with different shades for the 2005 **REGATTA** sculpture set.  (Facts 30-31.)  Mr. Hardy selected these colors first by selecting 12 to 18 from a choice of thousands of colors, and then from the 12 to 18 selecting the final three that appear in the finished set.  (Facts 30-31.)  Mr. Hardy made these decisions, based on what he thought was visually appealing and beautiful.  (Facts 13, 14, 21-23, 25-27 and 29.)

Defendant submits no evidence to the contrary.  Defendant's only evidence consists of conclusory statements by the Office, which are unsupported by any evidence.  Defendant

presents not other evidence whatsoever on originality.  It did not depose Mr. Hardy, nor Mr. van

Meter, nor did it adduce any written discovery from Design Ideas to support its motion.  In light

of the Copyright Act's express provisions that registration is permissive and copyright holders

can sue with registration refusals, defendant's bald motion is incredible.  Indeed, if these, and the

Act's more fundamental provision that copyright exists at the moment of creation and fixation of

original works, are to have any meaning at all, then the **REGATTA** sculpture sets must be held

as original and copyright protected.  (*Feist*, 499 U.S. at 345-359.)

**B.     The Court should not give the Office's review deference here.**

Defendant asserts the Court should defer to the Office's registration conclusions.

However, the law is clear that a district court is in just as good a position as the Office to decide

copyright protection.  (*Carol Barnhart Inc., v. Economy Cover Corp.*, 773 F.2d 411, 414 (2d Cir.

1985); *Celebration Intern., Inc. v. Chosun Intern., Inc.*, 234 F.Supp.2d 905, 912 (S.D.Ind.2002.),

*citing Whimsicality, Inc. v. Battat,* 27 F.Supp.2d 456, 462 (S.D.N.Y.1998) ("Notwithstanding

this *prima facie* evidence of a valid copyright, district courts have discretion to make an

"independent determination in an infringement action as to whether a work is copyrightable,

notwithstanding the position of the Copyright Office.").)  Moreover, a registration certificate

creates only a rebuttable presumption of copyright, not an irrebuttable one, and "merely" orders

the burdens of proof.  (17 U.S.C. 410(c); *Celebration Intern.*, 234 F.Supp.2d at 912*, citing

Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir.1980).)

While specialized agencies are entitled to deference on occasion, their analysis must be

reasonable.  (*Boyd Collection, Ltd., v. Bearington Collection, Inc.*, 360 F.Supp.2d 655, (M.D. Pa.

2005), *citing Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)

("The weight [accorded to an administrative] judgment in a particular case will depend upon the

thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."), *quoted with approval in United States v. Mead Corp.,* 533 U.S. 218, 228, 121 S.Ct. 2164 (2001.))

The Office letters defendant relies on indicate Design Ideas' **REGATTA** works are not copyright protected, because they are functional, lack separability and merely depict common stock elements.  However, the letters proffer no evidence on these points, and makes only conclusory statements on functionality, separability and common stock elements.  Design Ideas respectfully submits the Office' conclusions are insufficient.  Design Ideas specifically addresses each Office conclusion *infra*, but submits here that the Office was severely hampered in its review.

The Office thought the **REGATTA** sculpture set with white translucent sails was an ash tray.  (Goodrum Declaration at 6.)  While disturbing, this is somewhat understandable, considering the Office only reviewed (i) photographs of the white translucent sail **REGATTA** sculpture set and (ii) smaller photos of the sherbet **REGATTA** sculpture set included in a ~150 page catalog in a multi-work registration.  (Goodrum Declaration at 1.)  Office regulations permit only the deposit of photographs or drawings for three-dimensional sculpture such as the **REGATTA** sculpture set.  (37 C.F.R. 202.20(c)(2)(xi)(1).)  However, many of the original, creative elements of the **REGATTA** sculpture set establishing its copyright protection are three-dimensional, and can only be considered when viewing actual three-dimensional objects.  (Facts 13, 15, 17, 18, 21 and 24-31.)

The Middle District of Pennsylvania was recently faced with a similar situation as the one at bar.  In *Boyd*, defendant challenged the copyright protection for certain stuffed bears and

clothing for same, asserted to be derivative works.  (360 F.Supp.2d at 661.)  Two letters from the

Office, authored by an examiner assigned to review several of the copyright applications,

asserted the bears' clothing was not copyright protected, because they were useful articles.  (*Id.*)

The court found the Office letters "…lack[ed] any indicia of a reasoned decision-making

process."  (*Id.* at 661.)  The court stated:

> The letters are merely responses to individual copyright applications by
> Bearington and are apparently not intended as policy statements with the force of
> law. They are authored by an examiner in the Copyright Office, not a high-level
> official, and they do not indicate the source of the interpretation or the manner in
> which it was reached. Most importantly, the letters provide no rationale or
> explanation for the agency's construction of the statute. Their value as "persuasive
> authority," and the deference owed to the agency's interpretation, is thus
> substantially limited.

(*Id.* at 662.)  The court found that the Office's interpretation "fatally conflicts" with the Act's

plain meaning.  (*Id.*)  The court then held that the bears differing from prior designs only with

respect to their clothing were copyrightable and valid derivative works.

In the instant matter, Design Ideas submits the declaration of Mr. Hardy's detailing his

design decisions, as well as his original sketches of his designs and an actual copy of a sherbet

**REGATTA** sculpture set.  This evidence is in great contrast to the Office's reasoning in its

letters, and proves the REGATTA sculpture sets are copyright protected in their shapes,

individual design details and selection.  Mr. Hardy's decisions in creating the **REGATTA**

sculpture sets are without doubt the "fruits of [Mr. Hardy – the designer's] intellectual labor"

which clearly reflect a "creative spark" sufficient for copyright.  As the Supreme Court indicated

in *Feist*, the vast majority of works make the grade quite easily.  Considering all of the design

decisions evidenced in Mr. Hardy's declaration, and observing the works themselves, Mr.

Hardy's **REGATTA** sculpture sets are clearly protected by copyright, the Office's registration

refusal notwithstanding.

**C.      Registration is not required for copyright protection.**

The U.S. Copyright Act expressly states that copyright subsists regardless of registration,

and registration is not required for protection:

> (a) **Copyright protection subsists…in original works of authorship fixed in any tangible medium of expression,** now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device.

(17 U.S.C. § 102(a), entitled "Subject matter of copyright: In general.")  (Emphasis added.)

> (a) **Registration Permissive.** - At any time during the subsistence of the first term of copyright in any published or unpublished work in which the copyright was secured before January 1, 1978, and during the subsistence of any copyright secured on or after that date, **the owner of copyright or of any exclusive right in the work may obtain registration** of the copyright claim by delivering to the Copyright Office the deposit specified by this section, together with the application and fee specified by sections 409 and 708.  **Such registration is not a condition of copyright protection.**

(17 U.S.C. § 408(a), entitled "Copyright registration in general.")  (Emphasis added.)

> (a)….**In any case…where** the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and **registration has been refused, the applicant is entitled to institute an action for infringement** if notice thereof, with a copy of the complaint, is served on the Register of Copyrights. The Register may, at his or her option, become a party to the action with respect to the issue of registrability of the copyright claim by entering an appearance within sixty days after such service, but the Register's failure to become a party shall not deprive the court of jurisdiction to determine that issue.

(17 U.S.C. § 411(a), entitled Registration and infringement actions.")  (Emphasis added.)

Just last year, in *Reed Elsevier, Inc., v. Muchnick*, the U.S. Supreme Court ruled on

copyright registration.  (__ U.S. __, 130 S.Ct. 1237 (2010).)  The Court held that Section 411(a)

was nonjurisdictional, and that lack of a registration does not deprive a federal court of subject

matter jurisdiction.  (*Id.* at 1248.)  Justice Thomas noted:

First, and most significantly, § 411(a) expressly *allows* courts to adjudicate
infringement claims involving unregistered works in three circumstances: where
the work is not a U.S. work, where the infringement claim concerns rights of
attribution and integrity under § 106A, **or where the holder attempted to
register the work and registration was refused.**  Separately, § 411(c) permits
courts to adjudicate infringement actions over certain kinds of unregistered works
where the author "declare[s] an intention to secure copyright in the work" and
"makes registration for the work, if required by subsection (a), within three
months after [the work's] first transmission." 17 U.S.C. §§ 411(c)(1)-(2).

(*Id.* at 1246.)  (Emphasis in original and added.)

The Supreme Court's decision in *Muchnick* nonetheless, the courts and bar have long

understood and applied explicit statutory law to enforce copyright and grant relief in works

which the Office has refused to register.  In *Gucci Timepieces America, Inc., v. Yidah Watch Co.*,

on remand, the Central District of California, in the face of an Office cancellation, found the

sculptural features of a wrist watch proper statutory subject matter for protection, upheld a

preliminary injunction and entered a permanent injunction.  (47 U.S.P.Q.2d 1938, 1998 WL

650078 (C.D.Cal. 1998).)  The watches are depicted below:






*Gucci* Plaintiff's Watch                              *Gucci* Accused Watch

Plaintiff had secured a preliminary injunction, and defendant appealed to the Court of

Appeals for the Ninth Circuit.  Thereafter, the Office issued a letter of intention to cancel the

registration at issue, finding that the subject watch "does not contain copyrightable expression."

(*Id.* at 1939.)  The Office's letter explained:

> [T]he work does not have any features that can be identified as separable and that also constitute a copyrightable work of art.  The only potentially separable aspect of the work is the shape of the watch face frame forming a block letter 'G.'  However, lettering, including simple block letters, is in the public domain and not subject to copyright protection.

(*Id.*)  On remand, the district court stated that cancellation of a copyright "represents the equivalent of the Office's initial refusal to register."  (*Id.* at 1939-40, *citing Kiddie Rides U.S.A. v. Curran*, 1986 WL 13452, \*2 (D.D.C. 1986).)  The court further stated that while cancellation had the legal effect of removing the presumption of copyright validity (*see* 17 U.S.C. § 410(c)[12]), it does not preclude "independent findings of infringement."  (*Id.* at 1940.)

The court noted it had not relied on the registration presumption, but rather had made independent findings that the watch design is the proper statutory subject matter of copyright protection, stating:

> The rectangular frame of the Model 3600 which forms a three-dimensional "G" and the bracelet clasp arrangement are the features that combine to give the Model 3600 its unique appearance.  The frame around the face which forms the letter "G" in particular makes the Model 3600 unique and represents **artistic design separable from the utilitarian aspects of the watch**.

(*Severin Montres Ltd. v. Yidah Watch Co.*, 997 F.Supp. 1262 (C.D.Cal. 1997) (Emphasis added).)  (*See also Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.,* 95 F.R.D. 95 (D.Del. 1982) (Summary Judgment for defendant DENIED, based on argument that eyeglass displays were industrial designs and unprotectable as a matter of law, despite Copyright Office refusal for

---

[12] 17 U.S.C. § 410(c):  "In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate.  The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court."

displays);  *Allied Materials and Equipment Co. v. Pappa Gepetto's Toys Victoria Ltd.*, 1993 WL

245988 (D.Kan 1993) (Same; toy / sculpture; Office declines to intervene), *citing Poe v. Missing*

*Persons*, 745 F.2d 1238 (9th Cir. 1984) (Same; Summary judgment for defendant REVERSED;

REMANDED FOR TRIAL; clear vinyl swimsuit sculpture covered in rock media); *Oddzon*

*Prods., Inc. v. Oman,* 924 F.2d 346, 348 (D.C.Cir.1991) (*citing Atari Games Corp. v. Oman,* 888

F.2d 878, 881 (D.C.Cir.1989) (Silberman, J., concurring) (stating that the district court is not

obliged to defer to an agency's determination in a copyright infringement action)).)

   In each of these cases, copyright protection without registration was either found with

relief granted or summary judgment was denied with either trial, further proceedings or

settlement following.  The *Gucci* case is procedurally on point, with a registration issued,

followed by a letter from the Copyright Office advising of the intent to cancel.  (47 U.S.P.Q.2d at

1939.)  Despite the Office's intent to cancel the *Gucci* registration, the district court found

copyright protectable expression and converted its preliminary injunction into a permanent

injunction, under the auspices of the Ninth Circuit.  Here, Design Ideas sought to register a white

translucent **REGATTA** sculpture, and sought to supplement a registration to specifically identify

the sherbet **REGATTA** sculpture set in a multi-work registration, and the Office refused

registration and supplementation.  Regardless of the Office's conclusions, this Court still has the

express statutory power to (i) find Design Ideas' **REGATTA** sculpture sets a re copyright

protected.  (17 U.S.C. § 411(a); *Muchnick*, 130 S.Ct. at 1246.)  Design Ideas' **REGATTA**

sculpture sets are as original as the watches in *Gucci*, the eyeglass display cases in *Trans-World*,

the toy sculpture in *Allied Materials* and the swimming suit in *Poe*, as shown by the positive,

direct testimony Design Ideas makes of record.

**D.      Design Ideas' REGATTA sculpture sets are not useful articles.**

Defendant asserts that the Office concluded Design Ideas' **REGATTA** sculpture sets are

functional, that is, a "useful article," thereby preventing copyright protection.  Defendant submits

no other evidence on this point.  The Office appears to have concluded the sculptures were

functional merely because each is illuminated by a tealight candle, although it initially thought

the individual sculptures were ashtrays.  **(Goodrum Declaration at 6.)**  However, merely

because Design Ideas' individual **REGATTA** sculpture sets are illuminated by tealight candles

does not make them a useful article or render them not copyright protected.  (17 U.S.C. 101

(definitions of Useful Article), 102(a); *Feist*, 499 U.S. at 358.)

The Act defines "useful article" as:  "[A]n article having an intrinsic utilitarian function

that is not merely to portray the appearance of the article or to convey information…."  (17

U.S.C. 101.)  Design Ideas' **REGATTA** sculpture sets are purely decorative objects, not capable

or meant to act in any useful manner under the Act's definition, *e.g.*, as a light source for any

activity such as reading.  (Fact 16.)  Mr. Hardy sought to create decorative items for a table top,

but not light sources to perform any tasks.  (*Id.*)  Design Ideas' **REGATTA** tealight sculpture

sets and individual sculptures serve only a decorative purpose.  (Facts 13, 14, 16, 21-23, 25-27

and 29.)  As such, they do not fit the definition of a useful article, and are entitled to protection

regardless of separability.  (17 U.S.C. 101, 102(a); *Boyd*, 360 F.Supp.2d at 662 ("[R]egardless of

the level of deference to be accorded, the agency's interpretation fatally conflicts with the plain

meaning of the statute.").)

Defendant cites a scone case - *Jonathon Browning* in which the court found no copyright

protection, because a sconce is a useful article.  (2009 WL 1764652*)  This is understandable, as

typical sconces are light sources, as were those in that case.  However, individual tealight candles

are not capable of acting as such light sources, and do not provide illumination to, *e.g.*, read or illuminate an entire table for eating.  (Fact 16.)  The tealight candle element of Design Ideas' **REGATTA** sculpture sets are a purely decorative element, meant to make a decorative item more decorative.  (Facts 13, 14, 16, 21-23, 25-27 and 29.)

In *Boyd*, the court held that just because some items of clothing are useful articles, not all "clothing" is same.  (360 F.Supp.2d at 662; "Clothing on stuffed teddy bears not useful articles.")  Likewise, just because some objects that hold candles are useful articles, *e.g.*, candelabra, *etc.*, not every item with a candle element is a useful article.  (*Id.*)  Holding otherwise would not only "fatally conflict" with the Act, it would mean that every work of fine and every decorative item of applied art with an illumination element is a useful article.  Similarly, a miniature toy car or airplane with electric lights could be construed a flashlight.  However, common sense and the Act indicate this is not the case.  (17 U.S.C. 101, 102(a).)  Design Ideas' **REGATTA** sculpture sets have no function other than to portray their appearance.  (Facts 13, 14, 16, 21-23, 25-27 and 29.)  As such, they are not useful articles, and they are copyright protected, defendant's assertions to the contrary.  (17 U.S.C. 101, 102(a).)

E.     **If useful articles, the component parts of DI's REGATTA sculptures are separable and therefore copyright protected.**

Even if the Court concludes DI's **REGATTA** sculptures and sculpture sets are useful articles, copyright law still protects those original components of that are physically or conceptually separable from "useful articles."  (*Pivot Point International, Inc. v. Charlene Products*, 372 F.3d 913, 931-32 (7th Cir. 2004).)[13]  The Copyright Act defines a useful articles as

---

[13] The Act's definition of "pictorial, graphic and sculptural" (PGS) works specifically mentions the well-known separability requirement:   ""Pictorial, graphic, and sculptural works" include two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans. Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only

"an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information."  (17 U.S.C. 101.)  In *Pivot Point*, the Seventh Circuit specifically instructs on when conceptual separability exists:

> Conceptual separability exists…when the artistic aspects of an article can be conceptualized as existing independently of their utilitarian function.  **This independence is necessarily informed by whether the design elements can be identified as reflecting the designer's artistic judgment exercised independently of functional influences.  If the elements do reflect the independent, artistic judgment of the designer, conceptual separability exists.**  Conversely, when the design of a useful article is as much the result of utilitarian pressures as aesthetic choices, the useful and aesthetic elements are not conceptually separable.

(372 F.3d at 931.)  (Emphasis added.)

There are two main elements to each of Design Ideas individual glass sailboat sculptures - a base "hull" and a sail.  (Fact 9.)  The Office itself concluded the sail component separable from the hull, which it clearly is and physically so.  However, the Office also concluded that the hull was a useful article, containing no separable component.  Defendant submits no other evidence on this point.

DI respectfully disagrees with the Office' conclusion, and believes the hull itself is conceptually separable from its candle-holding function under *Pivot Point*.  As shown by the sculptures themselves submitted as Exhibit A to the declaration of Christopher Hardy, one can easily conceptualize the hull design existing independently of holding a candle:  One merely conceives if the hull shape lacking the place for the candle, that is, as a solid piece of glass.  Mr. Hardy also identifies his design decisions in creating the hull in his declaration, which show he overwhelmingly desired to create a decorative object for a table top, with illumination to enhance the visual appeal of the object, and not to merely hold a candle.  (Facts 13, 14, 16, 21-

---

to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article."  17 U.S.C. 101.

23, 25-27, 29.)  Mr. Hardy's artistic judgment was overwhelmingly exercised independently of functional influences.  (*Id.*)

Even if Mr. Hardy also made some design decisions based on functional concerns, his testimony clearly shows his aesthetic decisions predominated.  (*Id.*)  This is not difficult to conclude, as shown by the sampling of tea-light candle bases attached to Mr. Hardy's declaration as **Exhibit __**.  The function of holding tea-light candles can be performed in a myriad of different ways.  (*Id.*)  Mr. Hardy's hull design merely performs this function, because DI constructs a hole in it to hold the candle.  This alone does not render the **REGATTA** hull design conceptually inseparable from the function of holding candles under *Pivot Point.  (*372 F.3d at 931-32.)  The **REGATTA** hull designs are capable of existing independently, and are therefore conceptually separable from the function of holding a candle.  They are therefore copyright protected under *Pivot Point*.

## II.   The Merger and *Scenes a Faire* Doctrines Are Defenses to Infringement, Which Are Not To Be Considered at Copyrightability.

Defendant repeatedly asserts in its motion that Design Ideas' **REGATTA** sculptures are not entitled to copyright protection, because they "…consist of only common stock elements of a tealight base with a stock, common dual sail design…[,]" (d/e 22 at p. 15), "…the base is simply a standard tealight holder…" (*id.* at 15) and the sails are "…too trivial to qualify as sufficiently creative[,]"  (*id.*), citing merger and scenes a faire doctrine cases throughout.  However, Seventh Circuit caselaw makes clear that these doctrines are defenses to infringement, which are immaterial and not to be considered at copyrightability.  (*Reed-Union Corp. v. Turtle Wax, Inc.*, 77 F.3d 909, 913-14 (7th Cir. 1996); *Eagle Services Corp. v. H20 Industrial Services, Inc.*, 2005 WL 2406041* (N.D.Ind. 2005), *citing Reed-Union*, 77 F.3d at 914, *and Kregos v. Associated Press*, 937 F.2d 700, 705 (2d Cir. 1991).)

The merger doctrine prohibits copyright protection where "there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself." (*Eagle*, 2005 WL 2406041*, *6, *citing Kregos*, 937 F.2d at 705; *see also*, 17 U.S.C. 102(b).)[14]  Thus, courts and the Office often observe that copyright protects the expression of an idea, but not the idea itself. (*See*, *e.g.*, U.S. Copyright Office, Circular 1, *Copyright Basics*, section "What Works Are Protected.")  The *scenes a faire* doctrine is related, and prohibits copyright protection of expression that is rudimentary, commonplace, stock or unavoidable in a genre. (*Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923, 929 (7th Cir. 2003).)  The doctrine is mostly applied in the film, television and video contexts. *(Eagle*, 2005 WL 2406041*, *8, *citingTaylor Corp. v. Four Seasons Greetings, LLC*, 315 F.3d 1039, 1042 (8th Cir. 2003).)

Seventh Circuit law holds that merger and *scenes a faire* are defenses to infringement, to be analyzed at the liability stage when undertaking substantial similarity analysis, and should not be considered at copyrightability. (*Reed-Union*, 77 F.3d at 913-14; *Eagle*, 2005 WL 2406041*,*6 n.2.)  The Seventh Circuit instructs in *Reed-Union*: "The difference between the *scenes a faire* doctrine and copyright invalidity is ***vital*** to maintain." (*Reed-Union*, 77 F.3d at 914 (Emphasis added.).)

In the case, the Seventh Circuit held the plaintiff's copyright valid to extent it differed from predecessor works and contained original expression. (*Id*. at 914.)  The Court stated:

> [T]he common use of similar scenes shows that the fundamental ideas of the production are not copyrightable.  But each expression of a theme can claim protection to the extent it differs from its predecessors.

---

[14]  "In no case does copyright protection for an original work of authorship extend to any idea…."

(*Id*.)  Undertaking *scenes a faire* analysis at copyrightability, which the Court called "copyright invalidity," dangerously risks vitiating copyright protection based on liability or substantial similarity standards.  (*Id*.)  The Court held that applying *scenes a faire* too early, at copyrightability, would allow anyone to use plaintiff's television commercials (the works in suit there), because the copyright would be invalidated, regardless of whether it contained sufficient expression (which it did).  (*Id*. at 913-14.)  This would extend the doctrine too far, instead of merely prohibiting the prohibition of use of mere stock.  (*Id*.)

Defendant would have this Court do exactly what the Seventh Circuit warns against at this stage.  If the Court were to consider the merger and *scenes a faire* doctrines now, it would run the very great risk of vitiating Design Ideas' copyrights against all third parties, regardless of the existence of constitutionally protected expression in the **REGATTA** works.  (*Id*.)  This is precisely what the Seventh Circuit did not allow to occur in *Reed-Union*.  (*Id*.)

## III.    Even Were the Court to Apply the Merger and *Scenes a Faire* Doctrines at this Premature Stage, Yankee Candle Has Failed to Submit Sufficient Evidence Supporting Them.

Seventh Circuit law is clear that it is vital not to apply the merger and *scenes a faire* doctrines at the early stage of copyrightability, also know as copyright invalidity.  (*Reed-Union*, 77 F.3d at 913-14; *Eagle*, 2005 WL 2406041*,*6 n.2.)  However, even if this Court does apply these doctrines prematurely, defendant has failed to submit sufficient evidence supporting their application.  Defendant merely supports these liability defenses with the Copyright Office's registration refusals and nothing more.  Caselaw is absolutely clear that such is sufficient.

In undertaking merger analysis, a court must determine whether there are various means of achieving the desired purpose of a utilitarian work.  (*Eagle*, 2005 WL 2406041*,*6.)  The Northern District of Illinois has noted that determining when an idea and its expression have

merged is a difficult task.  (*Id*.)  Citing *Kregos* (937 F.2d at 705), the court warns: if the merger

doctrine is applied too readily, arguably available alternative forms of expression will be

precluded; if applied too sparingly, protection will be accorded to ideas."  In formulating the

analysis, the court cites the Third Circuit in *Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.*:

> [T]he line between idea and expression may be drawn with reference to the end
> sought to be achieved by the work in question.  In other words, *the purpose or
> function of a utilitarian work would be the work's idea, and everything that is not
> necessary to that purpose or function would be part of the expression of the idea.*
> Where there are various means of achieving the desired purpose, then the
> particular means chosen is not necessary to the purpose; hence, there is
> expression, not idea.

(2005 WL 2406041*,*6, *citing Whelan,* 797 F.2d 1222, 1236 (3rd Cir.1986).)  (Emphasis in

original.)

The only evidence of merger defendant submits are letters with conclusory statements

from the Copyright, which themselves lack supporting evidence, and nothing more.  These

documents contain mere, conclusory statements regarding merger and *scenes a faire*.  Such

evidence is insufficient under the test.  (*Eagle,* 2005 WL 2406041*,*6; *Whelan,* 797 F.2d at

1236.)  Defendant has submitted no evidence whatsoever that the expression of DI's **REGATTA**

works is necessary to their purpose, *e.g., arguendo*, to display sail boat sculptures or hold tealight

candles.[15]  The Office's conclusory statements do not do so, nor is there any indication that the

Office gathered any such evidence.  Rather, the declaration of Christopher Hardy clearly shows

the myriad of ways to, *e.g., arguendo*, depict sailboats in sculpture or hold tea light candles.

Likewise, defendant's premature *scenes a faire* defense to liability must fail.  Again,

defendant merely supports its *scenes a faire* defense with bald, conclusory statements in

correspondence from the Copyright Office, which themselves lack supporting evidence.

---

[15] Design Ideas suggests these purposes merely for the sake of argument, and does not hereby admit same.

Defendant submits no other evidence supporting this liability defense.  However, application of

the *scenes a faire* doctrine requires evidence of multiple examples that the disputed elements of a

work are commonplace.  (*Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004).)  In *Swirsky*, at the

liability stage and not copyrightability, the Ninth Circuit reversed the grant of summary

judgment based on *scenes a faire*, where defendant submitted evidence of only one third-party

use of the element.  (*Id*. at 850.)

> The Ninth Circuit noted:
>
> Under the *scenes a faire* doctrine, when certain commonplace expressions are
> indispensable and naturally associated with the treatment of a given idea, those
> expressions are treated like ideas and therefore not protected by copyright.

(*Id*. at 850.)  The defendant, Mariah Carey, claimed the first measure in her song "One" was

scenes a faire, by claiming it was used in a third-party song "Jolly Good."  (*Id*.)  Germane to the

doctrine generally, the Court held that the measure cannot be "common-place" by definition, if it

is shared by only two songs.  (*Id*.)  Rather, evidence of common-place use of the element is

required.  (*Id*.)

In the instant matter, defendant has submitted no evidence whatsoever that the elements it

claims are *scenes a faire* are common-place.  The Office letters do not do this, nor is there any

indication at all that the Office gathered this evidence.  (*Id*.)  Moreover, the declaration of

Christopher Hardy shows numerous third-party glass sailboat sculptures and tea light candle

holders which are nothing like Design Ideas' **REGATTA** sculptures.  None of this evidence

shows any similarity whatsoever between these third-party designs and the **REGATTA**

sculptures.  (*Id*.)  The Ninth Circuit expressly found summary judgment "inappropriate" as a

matter of law, where the defendant offered no independent evidence of similarity between the

challenged elements.  (376 F.3d at 850.)

Even if this Court undertakes merger and *scenes a faire* analysis at this early stage, defendant Yankee Candle has simply failed to submit sufficient evidence to establish the elements of DI's **REGATTA** sculptures are necessary to express the ideas of the works or are common-place.  (*Eagle*, 2005 WL 2406041\*, at \*6, *citing Whelan,* 797 F.2d at 1236; *Swirsky*, 376 F.3d at 850.)  Defendant Yankee Candle's bald reliance on conclusory statements in Copyright Office correspondence is insufficient.  (*Id.*)

**WHEREFORE**, plaintiff Design Ideas, Ltd., respectfully requests the Court to DENY defendant The Yankee Candle Company, Inc.'s second motion for summary judgment (d/e 32), because: (i) defendant has failed to shift the burden under Fed.R.Civ.P. 56; (ii) defendant has failed to submit any material evidence in support of its motion; (iii) the only evidence submitted – the letters of the U.S. Copyright Office contain conclusory statements, unsupported by any evidence; (iv) the U.S. Copyright Office's conclusions were not aided by a review of the best evidence available, namely, an actual copy of one of Design Ideas, Ltd.'s **REGATTA** sculpture sets; (v) Design Ideas, Ltd.'s sherbet **REGATTA** sculpture set is sufficiently original; (vi) Design Ideas, Ltd.'s **REGATTA** sculpture sets are not useful articles; (vii) if useful articles, Design Ideas, Ltd.'s **REGATTA** sculpture sets contain conceptually sufficiently original separable elements – the sail and the hull; (viii) if Design Ideas, Ltd.'s **REGATTA** white translucent sculpture set itself is sufficiently original as a compilation, then Design Ideas, Ltd.'s sherbet **REGATTA** sculpture set is an original derivative work, protected by copyright; and (ix) if Design Ideas, Ltd.'s **REGATTA** white translucent sculpture set itself is not sufficiently original as a compilation, then Design Ideas, Ltd.'s sherbet **REGATTA** sculpture set itself is a sufficiently original work as a compilation, protected by copyright.

**Respectfully submitted,**

**DESIGN IDEAS, LTD.**,

by its attorneys,

**LONDRIGAN, POTTER & RANDLE, P.C.**

Dated:  August 25, 2011                By:      James R. Potter
                                       Douglas J. Quivey
                                       1227 S. Seventh Street
                                       Springfield, Illinois  62703
                                       (217) 544-9823
                                       Fax: (217) 544-9826
                                       doug@lprpc.com

                                       and

                                       **SAIDMAN *DESIGNLAW* Group, LLC**

Dated:  August 25, 2011                By:      /s/ Garfield Goodrum
                                       Garfield Goodrum, Principal
                                       8601 Georgia Avenue, Suite 603
                                       Silver Spring, MD  20910
                                       (301) 585-8601
                                       Fax: (301) 585-0138
                                       garfield.goodrum@designlawgroup.com