## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

_____

| | | |
|---|---|---|
| **DESIGN IDEAS, LTD., an Illinois Corporation,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 10-CV-3217** |
| | ) | |
| **THE YANKEE CANDLE COMPANY, INC.,** a Massachusetts corporation, | ) | |
| | ) | |
| **Defendant .** | ) | |

### OPINION

This case is before the court for ruling on the Second Motion for Summary Judgment (#32) filed by Defendant, the Yankee Candle Company, Inc.  Following this court's careful consideration of the arguments of the parties and the exhibits provided by the parties, Defendant's Second Motion for Summary Judgment (#32) is GRANTED.  In addition, Defendant's Motion to Deem Facts Admitted (#47) and Motion to Strike (#52) are DENIED as moot.

### FACTS[1]

Plaintiff, Design Ideas, Ltd., is an Illinois corporation which maintains its principal place of business in Springfield, Illinois.  Plaintiff creates decorative housewares, giftware and office accessories, which it distributes nationwide.  Christopher Hardy is the Design Director for Plaintiff.  He has held this position for over 18 years and supervises or

---

[1] The facts are taken from Defendant's statement of undisputed material facts, Plaintiff's statement of additional material facts, and the documents submitted by the parties.  This court has only included facts it has concluded are material and adequately supported by evidence in the record.

participates in the design of all of the products Plaintiff creates.  Hardy stated in his declaration, dated August 25, 2011, that he designed Regatta sculpture sets which consist of three individual glass sailboat sculptures with sails of varying heights and colors.  In 2001, he designed a set with frosted white sails.  He next designed a set with two shades of blue sails and, in 2005, he designed a set with three different sherbet colored sails.  Hardy described in some detail the process he went through in creating the Regatta designs.  He stated that he did not want "to create literal, nautical reproductions of any actual sailboats" but instead "the works are abstractions of sailboats created solely" from his mind's eye. Hardy stated that he decided to use glass because he wanted to be able to see through the sculptures somewhat and wanted them to glow.  Hardy stated that he decided not to use a votive or larger candle because he did not want light to overpower the sculpture.  Therefore, the Regatta sculptures hold a small candle called a tea light.  Hardy said he wanted to create "an illuminated table-top decoration, aesthetically pleasing, but not useful as a light source for any purpose."   In his declaration, Hardy explained his thought processes regarding various aspects of his design, including the use of frosted glass, the design of the hull and sails, the selection of colors, and the number in a set.  Hardy attached sketches he made while he was designing the Regatta sculptures and also attached photographs of other products with a sailboat theme to show the differences between those designs and the Regatta sculptures.

On February 27, 2006, Plaintiff submitted an application to register a copyright for its Regatta sailboat tea light holder with a white translucent sail design and requested special

handing due to prospective litigation. On March 13, 2006, the Copyright Office sent Plaintiff a letter signed by Geoffrey R. Henderson, Senior Examiner of the Visual Arts Section. The letter stated that registration for the Regatta design was refused because it appeared to be a "'useful article' which does not contain any <u>separable</u> features that are <u>copyrightable</u>."[2] The letter stated that the work appeared to be an ashtray. The letter explained:

> Although the work contains a feature (the "sail") that can clearly be identified as "separable", that feature is not <u>copyrightable</u>.
>
> To be regarded as copyrightable, a work must be original, i.e., find its origin or source with the author and contain a certain amount of creative authorship. In the case of a work of art, a certain <u>minimum</u> amount of pictorial, graphic, or sculptural material in the work must have originated with the author. The determination of whether a work is copyrightable has nothing to do with its aesthetic or commercial value. See <u>Bleistein v. Donaldson Lithographing Co.</u>, 188 U.S. 239 (1903). The question is whether there is sufficient creative authorship within the meaning of the copyright law and settled case law. See <u>Feist Publications v. Rural Telephone Service Co.</u>, 499 U.S. 340

---

[2] Emphasis in original.

(1991).

Copyright does not extend to ideas, concepts, systems, or the methods that are embodied in the author's work. See 17 U.S.C. 102(b). In addition, familiar symbols or designs, typographic ornamentation, lettering, coloring and mere variations thereof are not copyrightable. See 37 C.F.R. Section 202.1.

The separable aspect of this work is not copyrightable because it represents either an insufficient amount of original authorship or one or more of the non-copyrightable elements mentioned above, or a minor non-copyrightable variation thereof. Consequently, we cannot register this claim.[3]

Plaintiff did not request reconsideration of this decision and did not appeal the Copyright Office determination.

The Copyright Office issued a copyright registration for Plaintiff's Spring 2006 catalog which included Regatta sailboat sculptures. The certificate of registration was given number VA 1-427-637 ('637 registration). The catalog described the sculptures as "Regatta tea lights in basic white and with new multi-colored sails." In a letter dated November 2, 2006, the Copyright Office noted that many of the sculptures in Plaintiff's catalogs were

---

[3] Emphasis in original.

4

"uncopyrightable useful articles."  In addition, in a letter dated July 2, 2007, the Copyright Office stated that "[c]opyright does not protect familiar symbols or designs; basic geometric shapes; words and short phrases such as names, titles, and slogans; or mere variations of typographical ornamentation, lettering or coloring."  This letter also stated that "the design of a 'useful article' is considered a pictorial, graphic, or sculptural work 'only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.'"  The letter stated that "much of the pictorial and sculptural material in these catalogs is not registrable."

On July 16, 2010, Plaintiff sent Defendant a letter stating that Plaintiff "created and sells a line of glass sculptures known as Regatta, which are protected by United States copyright law, including under Registration No. VA 1-376-012 (copy enclosed)."  Plaintiff attached a copyright registration, No. VA 1-376-012, for Design Ideas Basic Book 2006.[4] Plaintiff stated that it was aware that Defendant was reproducing and distributing copies of Plaintiff's Regatta sculptures.  Plaintiff insisted that Defendant cease and desist from offering and selling these products.

PROCEDURAL HISTORY

---

[4] Defendant has pointed out that this is a different registration than the registration referred to in Plaintiff's Complaint (#1).  Plaintiff has not explained its reliance on this registration in its cease and desist letter and has not argued that it has a valid copyright registration for its Regatta sculptures under that number.

On August 24, 2010, Plaintiff filed a Complaint (#1) against Defendant in this court. Plaintiff stated that its claims "arise out of defendant's actions with respect to certain products designed, developed, owned, marketed, sold and copyrighted by plaintiff." Plaintiff alleged that it applied to register its copyrights in its Regatta sculptures with the Copyright Office on February 27 and August 30, 2006, ultimately receiving Registration No. VA 1-427-637. Plaintiff alleged that Defendant had distributed glass sculptures which copied nearly exactly Plaintiff's Regatta sculptures. Plaintiff alleged that Defendant's acts constituted willful infringement of its copyrights.

On September 17, 2010, Plaintiff sent a letter to the Copyright Office informing the Office that it had commenced a copyright infringement action. In the letter, Plaintiff referred to the Copyright Office's refusal to register its copyright "based on separability and originality." Plaintiff attached a copy of its Complaint and gave the Copyright Office the opportunity to intervene. On September 20, 2010, Plaintiff submitted a Form CA to the Copyright Office and requested supplementary registration to the '637 registration. Plaintiff proposed to supplement its '637 registration by including the following amplification:

> The glass sailboat sculpture with white translucent sail appearing on page 5 of Design Ideas Spring 2006 is the subject of an application for copyright registration filed by Claimant on February 27, 2006, Control Number 61-406-9290(S), which the Office refused. The glass sailboat sculptures with bifurcated color sails appearing on page 6 of Design Ideas Spring 2006

were first published there and are derivative works of the glass

sailboat sculpture with white translucent sail, previously refused.

On February 8, 2011, the Copyright Office sent a letter to Plaintiff's counsel and provided a copy to Defendant's counsel. The letter stated that, although Plaintiff's Complaint alleged that Plaintiff submitted two applications for Regatta and obtained one registration, "it does not expressly state that one of these applications was refused."[5] The Copyright Office stated that it declined to intervene in the litigation, especially in light of its position regarding Plaintiff's Form CA for the '637 registration. The Copyright Office attached a letter authored by John H. Ashley, Chief of the Visual Arts & Recordation Division. In his letter, Ashley stated that, after careful consideration, the Copyright Office concluded that it could not complete the requested supplementary registration. Ashley's letter stated, in pertinent part:

> Specifically, the second sentence of the proposed amplification states that "[t]he glass sailboat structures with bifurcated color sails appearing on page 6 of the Design Ideas Spring 2006 were first published there and are derivative works of the glass sailboat sculpture with white translucent sail, previously refused." However, as the Office explained when it rejected the

---

[5] Defendant's counsel, Jacqueline A. Criswell, stated in her Declaration dated June 8, 2011, that, prior to her receipt of this letter, she and Defendant were unaware that the Copyright Office had previously refused registration for the white translucent Regatta sculpture on March 13, 2006.

"previously refused" design, the white translucent design is not copyrightable because it is not sufficiently creative. Instead, the design, including the curvature, is simplistic and merely depicts common sail imagery. It is thus not protectable because "the creative spark is utterly lacking or so trivial as to be nonexistent." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co. Inc.,* 499 U.S. 340, 359 (1991).

Similarly, the Office believes that the "bifurcated color sails" on page six of the Design Ideas Spring 2006 catalog do not contain copyrightable authorship (derivative or otherwise), which is required for registration. The addition of color to the sails (transforming what were white sails into two-toned red, blue and yellow sails) is not sufficiently original to transform the noncopyrightable original tea lights into works of authorship. Accordingly, we cannot accept Design Ideas' proposed amplification of the Registration.

Ashley stated that Plaintiff was allowed 30 days to object to the Copyright Office's determinations.

Subsequently, on March 7, 2011, Plaintiff sought leave to file an amended complaint. United States Magistrate Judge Byron Cudmore granted this request on May 12, 2011. On May 18, 2011, Plaintiff filed its First Amended Complaint (#20). In this Complaint, Plaintiff

8

again alleged that it "applied to register its copyrights in its Regatta sculptures with the United States Copyright Office on February 27 and August 30, 2006, ultimately receiving Registration No. VA 1-427-637." In a footnote, Plaintiff added:

> Design Ideas' February 27, 2006, application for an earlier Regatta sculpture with white translucent sails was refused registration on March 6, 2006 [sic] (Control No. 61-406-9290(S)). Pursuant to 17 U.S.C. §411(a), Design Ideas gave notice of this action to the Copyright Office, which has now declined to intervene. Design Ideas respectfully disagrees with the Copyright Office regarding the registrability of the subject works. Design Ideas' '637 registration is for the 3-D sculpture, 2-D artwork, photography and text first published in its Spring 2006 catalog, which includes the three Regatta sculptures depicted in the right-hand photo in paragraph 6 hereto.

In its footnote, Plaintiff did not disclose that the Copyright Office had determined that the '637 registration did not extend to the dual-colored sail because it lacked sufficient creativity.

Plaintiff sent a reply to the Copyright Office's February 2011 letter notifying Plaintiff that it would not issue the requested supplemental registration. On May 20, 2011, Ashley sent a letter to Plaintiff's counsel in response. Ashley stated:

> [W]e are reiterating our opinion that the dual-sails design work on page 6 of your client's catalog is a de minimis design

9

and is thus not registrable, which means that, in our view, they
are not covered by the issued basic registration.  As we pointed
out in the advisory warning letter that we sent after the basic
registration issued, the registration did not necessarily extend to
all of the contents in the catalog, not even to all of the new
content.  Though we might not have adverted directly to this
particular work when we made our initial examination of the
catalog, had we done so we would have treated this design as
not registrable either individually or as part of the collection of
new works within the catalog.  Whether considered as separate,
individual works of authorship, or as a collective set of three
pieces of authorship, we find that the dual-sails designs are not
adequately distinguishable from what we would consider to be
fairly stock, familiar interpretations of dual-sails.

Ashley closed by reiterating that "the requested supplementary registration cannot be issued
because you cannot add a specific reference to the non-copyrightable designs."  The
Copyright Office amended the '637 registration to state that "Dual-Sails designs on page 6
not copyrightable, therefore, are not covered by this registration."

On June 9, 2011, Defendant filed a Motion for Summary Judgment and Memorandum
in Support (#22).  Defendant argued that it was entitled to judgment in its favor because
Plaintiff's work at issue was not entitled to copyright protection.  Plaintiff then moved to

again amend its complaint.  Judge Cudmore allowed Plaintiff's request, and Plaintiff filed

its Second Amended Complaint (#29) on July 19, 2011.  In the Second Amended Complaint,

Plaintiff added the following language to its footnote regarding the '637 registration:

> Subsequent to the filing of this action and filing of the First
>
> Amended Complaint (d/e 20), the U.S. Copyright Office
>
> declined to grant a Form CA Supplemental Registration for the
>
> '637 registration, indicating in a letter dated May 20, 2011, that
>
> the sherbet colored Regatta sculpture work shown in the catalog
>
> ". . . is not registrable, which means that, **in our view**, they are
>
> not covered by the issued basic ['637] registration."  (D/e 22-7;
>
> Emphasis added.)  Design Ideas respectfully disagrees with the
>
> Copyright Office regarding its said 2006 application and the
>
> Form CA.[6]

Plaintiff also added Count II which requested a declaration that Plaintiff's copyrights are

registered for remedies purposes under 17 U.S.C. § 412.  On July 25, 2011, United States

District Judge Sue E. Myerscough entered a text order which ruled that Defendant's Motion

for Summary Judgment (#22) was rendered moot when the Second Amended Complaint was

filed.

On August 1, 2011, Defendant filed its Second Motion for Summary Judgment (#32),

---

[6] Emphasis added by Plaintiff to the quote from Ashley's letter.

11

with attached exhibits.  Defendant again claimed that it is entitled to summary judgment because the work at issue is not entitled to copyright protection.   On August 25, 2011, Plaintiff filed its Opposition to Defendant's Second Motion for Summary Judgment, with exhibits (#41, #42).  Plaintiff argued that the Regatta sculpture sets are original, creative works entitled to copyright protection.  On September 13, 2011, Defendant filed its Reply (#45) with additional exhibits.

On April 4, 2012, Judge Myerscough entered a text order and recused herself from participation in this matter.  On April 5, 2012, this case was assigned to this court.

ANALYSIS

I.  SUMMARY JUDGMENT MOTION

A.  STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial."  Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994).  In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party.  See Anderson v. Liberty Lobby, Inc.,  477 U.S. 242, 255 (1986); Singer v. Raemisch, 593 F.3d 529, 533 (7th Cir. 2010).

Whether a particular work is copyrightable is an issue of law for the court.  Schrock v. Learning Curve Int'l, Inc., 586 F.3d 513, 517 (7th Cir. 2009) citing Gaiman v. McFarlane, 360 F.3d 644, 648-49 (7th Cir. 2004); Woods v. Resnick, 725 F. Supp. 2d 809, 817 (W.D. Wis. 2010).  Therefore, determinations of copyrightability are appropriate for summary judgment.  See Woods, 725 F. Supp. 2d at 817.

### B.  PLAINTIFF'S CLAIM

A claim of copyright infringement has two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."   Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc. 499 U.S. 340, 361 (1991); Schrock, 586 F.3d at 517.  There is no dispute that, as far as Defendant's Second Motion for Summary Judgment, only the first element is at issue.

As a constitutional and statutory matter, "[t]he *sine qua non* of copyright is originality."  Feist Publ'ns, Inc. 499 U.S. at 345; Schrock, 586 F.3d at 518-19.  Copyright law assures authors of "original" creative works that others will not profit from their designs without their approval.  Feist Publ'ns, Inc. 499 U.S. at 345-56; Boyds Collection, Ltd. v. Bearington Collection, Inc., 360 F. Supp. 2d 655, 659 (M.D. Pa. 2005); 17 U.S.C. § 102.  To be original, a work must: (1) be independently created by the author, rather than copied from other works; and (2) "possess[] at least some minimal degree of creativity."  Feist Publ'ns, Inc., 499 U.S. at 345, citing 1 M. Nimmer & D. Nimmer, Copyright §§ 2.01[A],[B] (1990). "To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice."  Feist Publ'ns, Inc., 499 U.S. at 345.

13

To benefit from copyright protections, "the author must register the design with the United States Copyright Office, a division of the Library of Congress." Boyds Collection, 360 F. Supp. 2d at 659, citing 17 U.S.C. §§ 408, 412, 701. Registration is a prerequisite to a suit to enforce a copyright so that "an application to register must be filed, and either granted or refused, before suit can be brought." Gaiman, 360 F.3d at 654-55, citing 17 U.S.C. § 411(a). If refused, "the interpretation followed by the Copyright Office, as the agency responsible for administering federal copyright law, is entitled to respect as persuasive authority." Boyds Collection, 360 F. Supp. 2d at 661, citing Southco, Inc. v. Kanebridge Corp., 390 F.3d 276, 286-87 (3d Cir. 2004).

Whether the Copyright Office granted or refused registration, a copyright infringement lawsuit permits the court to make a determination whether the work is entitled to copyright protection. See Carol Barnhart Inc. v. Economy Cover Corp., 773 F.2d 411, 414 (2d Cir. 1985); see also Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237, 1246 (2010), citing 17 U.S.C. § 411(a). As noted previously, this determination is an issue of law for the court and is appropriate for resolution on summary judgment. See Woods, 725 F. Supp. 2d at 817.

In this case, the Copyright Office explicitly determined, on several occasions, that Plaintiff's Regatta tea light holders are useful items that do not contain separable features that are copyrightable. Plaintiff has argued, citing Boyds Collection, that the Copyright Office's determination is not entitled to deference because the analysis is not reasonable and "makes only conclusory statements on functionality, separability and common stock elements." Plaintiff has argued, at length, that the Copyright Office's opinions are "immaterial" and

14

should not be considered by this court.

The district court in <u>Boyds Collection</u> found that the deference owed to the Copyright Office's interpretation in that case was substantially limited because the two letters offered in support of the Copyright Office's view lacked "any indicia of a reasoned decision-making process" and provided "no rationale or explanation for the agency's construction of the statute." <u>Boyds Collection</u>, 360 F. Supp. 2d at 661-62. The court in <u>Boyds Collection</u> also noted that the letters setting out the determination were authored by an examiner in the Copyright Office, not a high-level official, and did not indicate the source of the interpretation or the manner in which it was reached. <u>Boyds Collection</u>, 360 F. Supp. 2d at 662. The court also concluded that the Copyright Office's "interpretation fatally conflicts with the plain meaning of the statute." <u>Boyds Collection</u>, 360 F. Supp. 2d at 662.

This court concludes that <u>Boyds Collection</u> does not support Plaintiff's argument that this court should not give deference to the opinions of the Copyright Office in this matter. The court in <u>Boyds Collection</u> specifically recognized that "deference to agency opinion varies with 'the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position.'" <u>Boyds Collection</u>, 360 F. Supp. 2d at 661-62, <u>quoting</u> <u>United States v. Mead Corp.</u>, 533 U.S. 218, 228 (2001); <u>see also</u> <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 140 (1944) ("The weight [accorded to an administrative] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to

15

control.").  Plaintiff has pointed out that the Copyright Office's first refusal of registration for the Regatta sculptures referred to the work as an "ashtray."  However, this court concludes that the remainder of that decision was detailed and well reasoned.  In addition, the decision to deny supplemental registration to the colored Regatta sculptures was written by John H. Ashley, Chief of the Visual Arts & Recordation Division of the Copyright Office. In his letters, Ashley carefully and persuasively explained why the Regatta tea light holders are not worthy of copyright protection.  Most importantly, unlike the situation in <u>Boyds Collection</u>, the decision of the Copyright Office in this case does not conflict with the plain meaning of the statute, nor does it conflict with the applicable case law.  This court concludes that the consistent, well-reasoned decisions of the Copyright Office are entitled to deference in this case.

Defendant argues that Plaintiff's Regatta sculptures are not protectable because they are useful articles, tea light holders, merely depict common sail imagery consisting of familiar stock components, and are not sufficiently creative.  Defendant notes that tea light candles are made in one uniform size.  It argues that Regatta's purpose is utilitarian, to function as a candle holder.  It contends that the sail is curved to protect the candle light. Defendant contends that, while the sail itself has the potential to constitute a separable aspect of the work, the addition of sails, whether translucent or colored, merely depict common sail imagery and is too trivial to qualify as sufficiently creative.

A "'useful article' is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information. An article that is normally

16

a part of a useful article is considered a 'useful article'."  17 U.S.C. § 101.  Copyright law

"excludes from its protection 'useful articles,' products that have an 'intrinsic utilitarian

function' apart from appearance or expression."  Boyds Collection, 360 F. Supp. 2d at 661,

citing 17 U.S.C. §§ 101, 102(a)(5).  If a work is determined to be a useful article, it falls

within the definition of pictorial, graphic or sculptural works entitled to copyright protection

"only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural

features that can be identified separately from, and are capable of existing independently of,

the utilitarian aspects of the article."  17 U.S.C. § 101.

> The Seventh Circuit has explained:

> Conceptual separability exists . . . when the artistic
> aspects of an article can be "conceptualized as existing
> independently of their utilitarian function."  *Carol Barnhart*,
> 773 F.2d at 418.  This independence is necessarily informed by
> "whether the design elements can be identified as reflecting the
> designer's artistic judgment exercised independently of
> functional influences."  *Brandir [Int'l, Inc. v. Cascade Pacific*
> *Lumber Co.,* 834 F.2d 1142, 1145 (2d Cir. 1987)].   If the
> elements do reflect the independent, artistic judgment of the
> designer, conceptual separability exists.  Conversely, when the
> design of a useful article is "as much the result of utilitarian
> pressures as aesthetic choices,"  *id.* at 1147*,* the useful and

17

aesthetic elements are not conceptually separable.

Pivot Point Int'l, Inc. v. Charlene Prods., Inc., 372 F.3d 913, 931 (7th Cir. 2004).  The Seventh Circuit has recognized, however, that "[o]f the many fine lines that run through the Copyright Act, none is more troublesome than the line between protectible pictorial, graphic and sculptural works and unprotectible utilitarian elements of industrial design."  Pivot Point, 372 F.3d at 921, quoting Paul Goldstein, 1 *Copyright* § 2.5.3, at 2:56 (2d ed. 2004).

Even if conceptual separability exists, the work is copyrightable only if it is sufficiently original for copyright protection.  See Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc., 618 F.3d 417, 429-30 (2d Cir. 2010).  Plaintiff insists that, based upon Feist Publ'ns, Inc., the amount of originality required for copyright protection is "not particularly stringent" and the requisite level of creativity is "extremely low."  Feist Publ'ns, Inc., 499 U.S. at 358, 345.  Plaintiff noted that it provided Hardy's declaration which "details all of the aesthetic and creative design decisions he made when creating his REGATTA sculpture sets."  Plaintiff argued that the Regatta sculpture sets "are clearly protected by copyright, the [Copyright] Office's registration refusal notwithstanding."

This court has carefully reviewed all of the exhibits provided by the parties, including the actual sherbet-colored Regatta sculptures submitted as a conventional exhibit by Plaintiff. In conducting its review, this court has given deference to the opinions of the Copyright Office which concluded that the sculptures are useful items and, even if separable from their useful function, not sufficiently creative to warrant copyright registration.  The Copyright Office has stated that copyright does not protect familiar symbols or designs and that the

18

design of the Regatta sculptures is overly simplistic and merely depicts common sail imagery. The Copyright Office also stated that the "dual-sails designs are not adequately distinguishable from what we would consider to be fairly stock, familiar interpretations of dual-sails."

After careful review, this court concludes that the Regatta sculptures are tea light holders shaped to look like sailboats. This court agrees with the Copyright Office that the Regatta works are shaped to hold tea lights and, therefore, are useful items. This court further agrees that, even if the sailboat shapes attached to the tea light holders are separable from the utilitarian function, the sailboat shapes are not sufficiently creative to be copyrightable. This court concludes that the sailboat shape is a familiar, well-known shape so that decisions regarding curve, size, color, and number included in a set do not make the product sufficiently original so that the work is copyrightable. See Satava v. Lowry, 323 F.3d 805, 811-12 (9th Cir. 2003) ("selection of the clear glass, oblong shroud, bright colors, proportion, vertical orientation, and stereotyped jellyfish form, considered together, lacks the quantum of originality needed to merit copyright protection"). Because of this conclusion, Defendant's Second Motion for Summary Judgment (#32) is GRANTED.

## II. REMAINING MOTIONS

Defendant has filed a Motion to Deem Admitted Certain Material Facts (#47) and a Motion to Strike Plaintiff's Opposition to the Motion (#52). In ruling on Defendant's Second Motion for Summary Judgment, this court has made its own determination as to whether facts have been admitted and were adequately supported by the record. In addition, this court

has only considered arguments which were appropriately made pursuant to the Federal Rules of Civil Procedure and this court's Local Rules.   For example, in its Opposition to Defendant's Motion to Deem Admitted Certain Material Facts (#49), Plaintiff complained bitterly about Defendant's failure to provide discovery which was requested prior to Judge Myerscough's order staying discovery, entered on June 14, 2011.  If Plaintiff believed that Defendant was not complying with its discovery obligations, Plaintiff should have filed a Motion to Compel under Rule 37 of the Federal Rules of Civil Procedure.  Or, if Plaintiff believed it needed information from Defendant in order to justify its opposition to the Second Motion for Summary Judgment, Plaintiff should have filed a Motion under Rule 56(d) of the Federal Rules of Civil Procedure.  Plaintiff's attempt to raise this as an issue after its Response to the Second Motion for Summary Judgment was filed does not comply with the applicable Rules and has not been considered by this court.

However, because this court has made its own determination as to what to consider, in accordance with the applicable Rules, this court concludes that Defendant's Motion to Deem Admitted Certain Material Facts (#47) and Defendant's Motion to Strike Plaintiff's Opposition to the Motion (#52) are appropriately DENIED as moot.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Second Motion for Summary Judgment (#32) is GRANTED. Judgment is entered in favor of Defendant and against Plaintiff on Plaintiff's Second Amended Complaint (#29).

(2) Defendant's Motion to Deem Admitted Certain Material Facts (#47) and

20

Defendant's Motion to Strike Plaintiff's Opposition to the Motion (#52) are DENIED as moot.

     (3) This case is terminated.

ENTERED this 9th day of August, 2012

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE